UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Tammy L.<br>*Plaintiff*, | )<br>)<br>) | 3:21-CV-01026 (KAD) |
| v. | )<br>) | |
| Kilolo KIJAKAZI,<br>*Defendant*. | )<br>) | JULY 26, 2022 |

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge:

The Plaintiff, Tammy Lincoln ("Plaintiff"), brings this administrative appeal pursuant to 42 U.S.C. § 405(g). She appeals the decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), denying her application for disability insurance pursuant to Title II of the Social Security Act (the "Act"). Plaintiff moves to reverse the Commissioner's decision because she argues that the Commissioner's findings are not supported by substantial evidence in the record and/or that the Commissioner did not render a decision in accordance with applicable law. Alternatively, she seeks a remand for further proceedings before the Commissioner. In response, the Commissioner moves for an order affirming the decision, asserting that it is supported by substantial evidence in the record. For the reasons set forth below, the Plaintiff's Motion to Reverse, ECF No. 13, is GRANTED in part and the matter is remanded to the Commissioner for further proceedings consistent with this decision. The Commissioner's Motion to Affirm, ECF No. 17, is DENIED.

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

1

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations[1]; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant is unable to perform his past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 404.1520(a)(4)(i)–(v); 404.1509.

---

[1] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

The claimant bears the burden of proof with respect to Steps One through Four and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . .with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin,* 523 Fed. Appx. 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "if there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013).

**Factual and Procedural History**

On January 7, 2019, Plaintiff filed an application for disability insurance benefits[2] pursuant to Title II of the Act, alleging an onset date of December 31, 2015. The claim was initially denied on April 29, 2019, and upon reconsideration on June 26, 2019. Thereafter, a telephonic hearing was held before an Administrative Law Judge (ALJ) on February 21, 2021. A vocational expert, ("VE"), Jeffrey Tittelfitz, testified at the hearing and Plaintiff was represented by an attorney, Jack Cahill. On March 16, 2021, the ALJ issued a written decision denying Plaintiff's application for benefits. Plaintiff submitted a Request for Review by the Appeals Council on March 29, 2021, which was denied on May 28, 2021.

In his decision, the ALJ followed the sequential evaluation process for assessing disability claims.[3] At Step One, the ALJ found that Plaintiff had not been engaged in substantial gainful activity between December 31, 2015, the alleged onset date, and September 30, 2018, the date last insured. At Step Two, the ALJ determined that Plaintiff had a severe combination of impairments, which included fibromyalgia, Morbihan's disease, cervical disc protrusion post cervical discectomy and fusion, and a left knee meniscus tear. At Step Three, however, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1. At Step Four, the ALJ found that Plaintiff has the RFC to perform sedentary work[4] subject to several limitations, to include that Plaintiff can only occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can frequently balance and stoop; can occasionally crouch, kneel, and crawl; can frequently handle

---

[2] The regulations for disability and disability insurance are found at 20 C.F.R. § 404.900, *et seq.*
[3] *See supra.*
[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

and finger; can have occasional exposure to extreme heat and extreme cold; and can have no exposure to hazards such as unprotected heights and moving parts. Lastly, at Step Five, the ALJ determined that Plaintiff does not have the RFC to perform her past relevant work as a hairstylist but based on testimony from the VE, that there are a significant number of jobs in the national economy that Plaintiff can perform. Accordingly, the ALJ concluded that the Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act. This timely appeal followed.

**Discussion**

Plaintiff advances three arguments in her appeal: first, that the administrative record was not adequately developed; second, that the ALJ's consideration of Plaintiff's fibromyalgia was insufficient at Step Two; and third, that the ALJ's findings at Step Five, which determined that Plaintiff could perform sedentary work in multiple occupations in the national economy, are unsupported by substantial evidence in the record. The Commissioner contests each of these assertions and seeks an affirmance of the determination that Plaintiff was not disabled under the Act.

Although the Court disagrees with Plaintiff as to her first two arguments regarding the adequacy of the record and the consideration of her fibromyalgia, the Court agrees that the ALJ erred in his analysis at Step Five. Specifically, the Court finds that the VE's testimony on job incidence numbers was wholly unsupported and therefore cannot provide substantial evidence to support the ALJ's determination at Step Five.

1. <u>The Vocational Expert's Testimony was Inadequate</u>

The Court begins with the error on which this case turns. At Step Five, an ALJ must determine that significant numbers of jobs exist in the national economy that a claimant can

perform.[5] *See McIntyre*, F.3d 146 at 150; *see also Brault*, 683 F.3d 443 at 445 (finding that at Step Five, the burden "shift[s] to the Commissioner to show there is other work that [the claimant] can perform."). The ALJ can make this determination by either applying the Medical Vocational Guidelines—not applicable here—or by adducing testimony of a vocational expert. *See Brault*, F.3d 146 at 151 (citation omitted). A VE's testimony may constitute substantial evidence where the VE has "identified the sources he generally consulted to determine" the number of jobs available in the national economy but there is no requirement for the VE to "identify with greater specificity the source of his figures or to provide supporting documentation." *Seneschal v. Berryhill*, No. 3:18-cv-00015 (RMS), 2019 WL 1075606, at *4 (D. Conn. Mar. 7, 2019) (quoting *Brault*, 683 F.3d 443 at 450). For example, an ALJ does not err when he relies on a vocational expert's testimony that is based on "personal experience, labor market surveys, and published statistical sources in determining the number of jobs available." *Martinez v. Berryhill*, No. 3:17-cv-00843 (SRU), 2019 WL 1199393, at *18 (D. Conn. Mar. 14, 2019); *see also Debiase v. Saul*, No. 3:19CV00068 (RMS), 2019 WL 5485269, at *11 (D. Conn. Oct. 25, 2019).

In *Biestek,* the Supreme Court addressed the contours of a VE's testimony and the circumstances under which it could constitute substantial evidence to support an ALJ's Step Five determination. *See Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). There, the VE had attested that her testimony as to the nature and number of jobs in the national economy which the plaintiff could perform derived from Department of Labor statistics as well as surveys she had conducted with her own clientele. *Id.* at 1153. The expert balked when asked to produce the data from the private survey, and the ALJ interjected that the data need not be provided. *Id.* On appeal, the disability

---

[5] Because the Court's decision to remand concerns the substantial evidence standard, the Court declines to address the additional Step Five arguments made by Plaintiff, which challenge the characterization of certain occupations within the *Dictionary of Occupational Titles* ("DOT"), the adequacy of the hypotheticals posed to the VE, and the mathematical possibility of the job incidence testimony.

claimant asserted that because the VE refused to provide the requested data, as a matter of law, the testimony could not "clear the substantial evidence bar." *Id*. The Supreme Court rejected this categorical approach:

> Sometimes, an expert's withholding of such data, when combined with other aspects of the record, will prevent her testimony from qualifying as substantial evidence. That would be so, for example, if the expert has no good reason to keep the data private and her testimony lacks other markers of reliability. But sometimes the reservation of data will have no such effect. Even though the applicant might wish for the data, the expert's testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold. The inquiry as is usually true in determining the substantiality of evidence, is case by case.

*Id.* at 1157. And in dicta, the Supreme Court confirmed that even "assuming no demand, a vocational expert's testimony *may* count as substantial evidence even when unaccompanied by supporting data." *Id.* at 1155 (emphasis added).[6] The reviewing court must consider "all features of the vocational expert's testimony, as well as the rest of the administrative record." *Id.* at 1157. And although the ALJ's analysis deserves a certain amount of deference, *Brault* establishes that "[a]s deferential as the 'substantial evidence' standard is, it is also extremely flexible" because it "gives federal courts the freedom to take a case-specific, comprehensive view of the administrative proceedings, weighing all the evidence to determine whether it was 'substantial.'" 683 F.3d at 449. Since *Biestek*, at least one court in this District has identified factors other than source data, including the VE's "credentials, history of testimony. . .ability to answer the ALJ and attorney's questions, and the alleged basis for her testimony," that may be relevant in determining whether

---

[6] In rejecting the proposed categorical rule urged by the plaintiff, the Supreme Court envisioned several hypothetical cases which counseled against such an approach. In one such hypothetical a vocational expert has "top-of-the-line credentials, including professional qualifications and many years' experience…a history of giving sound testimony about job availability in similar cases" and she "explains that she arrived at her figures by serving a range of representative employers; amassing specific information about their labor needs…and extrapolating those findings to the national economy by means of a well-accepted methodology." *See Biestek*, 139 S. Ct. at 1155. These bases for the expert's testimony are illustrative of the kinds of sources that can support a vocational expert's testimony regarding job incidence numbers. As discussed below, none of these hypothetical sources are present (or at least identified) in the instant case.

7

the substantial evidence standard is met. *Keovilay v. Berryhill*, No. 3:19-cv-0735 (RAR), 2020 WL 3989567, at *9 (D. Conn. Jul. 15, 2020).

At Plaintiff's hearing, the VE did not identify any source that he consulted to establish the job incidence numbers to which he testified. Nor did he testify, directly or by inference, that his testimony was based on any personal experience or history of testifying specifically on job incidence data. At the hearing, the VE testified, in relevant part:

> ALJ: Is there work in the national economy this hypothetical individual could perform, and if so, can you give me some examples?
>
> VE: Yes. Some representative examples within this hypothetical would include work as a telephone sales clerk, 237.367–014.[7] It is sedentary work with an SVP[8] of 2, unskilled. There's an estimated 71,065 positions in the national economy. A second example would be document preparer, 249.587–018, sedentary work, SVP 2, unskilled. There're an estimated 72,861 positions nationally. And a third example would be work as a final assembler, 713.687–018, sedentary work, SVP 2, unskilled. There're an estimated 8,574 positions nationally.
>
> ALJ: Is your testimony consistent with the Dictionary of Occupational Titles?
>
> VE: Yes.

Tr. of ALJ Hr'g, R. at 101–02. The transcript reveals no further questions by the ALJ as to the source or basis for the job incidence numbers provided. After this exchange, Attorney Cahill did not further question the VE. Attorney Cahill likewise did not challenge the VE's credentials or

---

[7] The DOT defines types of jobs in the national economy but does not speak to how many of those jobs are available. *See Brault*, 683 F.2d 443 at 446.
[8] Specific Vocational Preparation as defined by the DOT.

qualifications.[9] Thus, at no point during the hearing were *any* sources for the job incidence numbers identified.[10]

Further, the VE's assertion that his job incidence testimony was consistent with the DOT did not provide substantial evidence for the ALJ's determination. The DOT may be an appropriate basis for a vocational expert's opinion regarding the *type* of job available to a claimant but not regarding the *number* of available jobs of that type. *See Martinez*, 2019 WL 1199393, at *18 (emphasis in original).

As to whether the ALJ considered any of the acceptable and relevant factors discussed above in deciding to accept the VE's testimony in this case, the Court has no way of knowing because the ALJ does not explain his decision to credit the VE's testimony. And as also discussed above, the record itself is devoid of *any* basis upon which the VE based his testimony regarding the number of jobs available to the Plaintiff in the national economy. (This is not to criticize the VE; he simply was not asked the source of the job incidence numbers.[11]) And although an ALJ is not required to "state on the record every reason justifying a decision," *Brault,* 683 F.3d at 448, had he done so, the gaping hole in the support for his decision might have been filled.[12] The

---

[9] To the contrary, the ALJ specifically asked, "And Mr. Cahill, any objection to Mr. Tittelfitz's qualifications?" Attorney Cahill responded, "No. Mr. Tittelfitz is well-qualified, Your Honor; we stipulate." Tr. of ALJ Hr'g, R at 100.
[10] Following testimony regarding an employer's likely tolerance for off task behavior and absenteeism, the following exchange occurred between the ALJ and the VE:

> Q: All right. Off task and absenteeism is not in the DOT, correct?
> A: No. I'm relying on my 42 years of experience having interviewed thousands of employers regarding what their expectations are for performance and attendance.

*Id.* at 103. The transcript is unambiguous that the reference to the VE's experience was the source *only* for his testimony regarding off task and absenteeism opinions and sheds no light on the source for the job incidence numbers.
[11] It does not seem to this Court to be a herculean undertaking to simply inquire as to the source, even generally, for the job incidence numbers. Absent same, the number may have been "conjured out of whole cloth." *Brault,* 683 F.2d at 450. And based upon the Court's experience, the Court recognizes that upon remand, the VE will likely be able to identify a reliable source for the numbers, perhaps rendering the time spent on appeal and remand wasted. But it is impossible to know if this is so on a record this devoid of supporting evidence. And the Court observes that avoiding any such waste of resources is clearly in the hands of the Commissioner going forward.
[12] By way of a single example only, the ALJ might have observed that he has worked with the VE for many years and has found his testimony to be consistently well-founded and secured through reliable methodology.

combination of the ALJ's failure to explain why he credited the VE's testimony and the fact that the VE's testimony identified no source for his job incidence numbers, leads to but one conclusion—the ALJ's determination at Step Five does not pass, the albeit low, substantial evidence bar. *See id.* (finding that a VE's testimony was inadequate because he failed to identify any sources or method of analysis other than mentioning that his testimony was consistent with the DOT).[13] *See generally Soufrine v. Saul*, 3:20-CV-01404 (KAD), (D. Conn. Jan. 31, 2022).

Finally, the Commissioner's reliance on *Brault* to escape this conclusion is misplaced. *Brault* required the Court to determine whether an ALJ must explore the reliability of a VE's identified source when that source is challenged as unreliable by a claimant. Here, the record lacks any identified source, so *Brault* is inapplicable in assessing whether the Step Five determination was supported by substantial evidence. Moreover, although in a very different context, the *Brault* court reaffirmed what it had previously held—that a VE need not "identify with greater specificity the source of his figures or to provide supporting documentation" as long as he "identified the sources he generally consulted to determine such figures." 683 F.3d at 451. Accordingly, *Brault* supports the Court's conclusion.[14]

---

[13] *Biestek* did not establish a bright-line rule defining when evidence upon which an ALJ relies is sufficiently substantial. And the Court does not determine herein that *Biestek* establishes a presumption that the VE's testimony cleared the substantial evidence bar. *Biestek's* narrow holding only forecloses a rule that underlying data supporting source information is a *necessary* condition for satisfying that bar. In *Biestek,* the vocational expert identified two sources as supporting the job incidence testimony–the Department of Labor statistics and the results of a private internal survey she had conducted with her clients. It was the data underlying the survey which was withheld. Here, the sources themselves remain a complete mystery, a scenario that *Biestek* does not address.

[14] The Commissioner also argues that because the Plaintiff stipulated to the VE's credentials, *Brault* relieves the Commissioner of the obligation to inquire as to the VE's source. *Brault* simply does not stand for this proposition and if so construed, would essentially eliminate the Commissioner's burden at Step Five to put forth substantial evidence that there are jobs available in the national economy that the Plaintiff can perform. Indeed, the Commissioner does not identify any authority that stands for the proposition that a Plaintiff waives a challenge to the VE testimony by stipulating to the VE's credentials. And at least the Seventh Circuit has found that a claimant need not object to an expert's qualifications to object to the expert's methodology. *See Brace v. Saul*, 970 F.3d 818, 823 (7th Cir. 2020); *see generally Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018) (in which the parties stipulated to the expert's qualifications, but the claimant nonetheless successfully challenged the expert's methodology).

In sum, the Court must assess the substantiality of the evidence on a case-by-case basis. In this case, absent any identifiable source of the expert's opinion and absent any identifiable basis upon which the ALJ credited the opinion, the Court determines that there was not substantial evidence to support the ALJ's Step Five conclusions. And there is no question that the ALJ did rely upon the VE's job incidence testimony in determining Plaintiff's disability status as his conclusions mirror the VE's testimony. ALJ Dec., R. at 26–27. Accordingly, at the only Step in the evaluation process in which the Commissioner bears the burden, that burden is not met. *Cf., Crespo v. Comm'r of Soc. Sec.,* No. 3:18CV00435(JAM), 2019 WL 4686763, at *9 (D. Conn. Sept. 25, 2019) (finding, using a case-by-case approach, that a VE's failure to identify sources of job-numbers data did not dispel the existence of substantial evidence for an ALJ's Step Five determination). In making this determination, the Court is not applying a bright line rule regarding when a vocational expert's testimony provides substantial evidence, but determines only that in this case, the ALJ did not have and/or did not identify substantial evidence upon which to rely at Step Five.

2. The Administrative Record was Adequately Developed

The Court agrees with the Commissioner that the ALJ adequately developed the administrative record. First, Plaintiff argues that the ALJ did not properly inquire as to the onset date of Plaintiff's dermatomyositis, a limitation assessed through a medical source statement by Dr. Nizar Chahin and testified to by a medical expert, Dr. Haddon Alexander. And second, that there is an "obvious gap" in the record because it does not contain a medical source statement of any kind from Dr. Kasey Gregory, Plaintiff's treating physician from July 2017 to May 2019. The Commissioner argues that the ALJ adequately developed the record because there was no objective medical evidence to support the existence of Plaintiff's dermatomyositis before her date last

11

insured, September 30, 2018. And, that no medical source statement was required from Dr. Gregory because the evidence from that treatment period does not support a finding of any disabling symptoms or limitations. The Court agrees with the Commissioner.

*Dermatomyositis Diagnosis*

As to Plaintiff's dermatomyositis, the ALJ rejected Dr. Chahin's opinion, as it was written more than a "year after the period at issue"[15] and it did "not identify an onset date for these limitations." ALJ Dec., R. at 25. The ALJ notes that Plaintiff was not diagnosed with dermatomyositis until she was seen by a rheumatologist in March 2019. *Id.* at 22. Indeed, a medical opinion provided well after the relevant period for establishing disability "may be of little, or no, probative value regarding [the] plaintiff's condition during the relevant time period." *Sinclair*, 2019 WL 3284793, at *12 (quoting *Durakovic v. Comm'r Soc. Sec.*, No. 3:17-CV-0894 (TJM)(WBC), 2018 WL 4039372, at *3 (N.D.N.Y. May 30, 2018)). Plaintiff further argues that the ALJ should not have assumed that Dr. Chahin's opinions pertained to that period without making further inquiry. But Plaintiff did not provide adequate medical evidence to demonstrate the existence of this disability prior to the expiration of her insured status.

To be eligible for benefits, a claimant must establish that he or she became disabled prior to the expiration of their insured status. 42 U.S.C. §§ 416(i), 423(c). An impairment that reached disabling severity *after* the expiration of an individual's insured status—even if the impairment may have existed before the insured status expired—does not entitle one to a designation of disabled for the purpose of receiving benefits. *See Monette v. Astrue*, 269 F. App'x 109, 111 (2d Cir. 2008). Plaintiff cites to 20 C.F.R. § 404.1512(e)(1), which requires an ALJ to request

---

[15] The relevant time period for disability benefits claims is typically between the claimant's alleged onset date and the date last insured. *See Sinclair v. Saul*, 3:18-CV-00656 (RMS), 2019 WL 3284793, at *n3 (D. Conn. July 22, 2019). Dr. Chahin started treating Plaintiff in May 2019, a period outside the one at issue in her application for benefits.

additional information from a treating physician when the medical report is missing necessary information. Plaintiff does not acknowledge, however, that based on the entire record, there was no missing necessary information. Dr. Alexander, an impartial medical expert, testified that he could not opine that the Plaintiff met listing 14.05 on or before September 30, 2018, the date last insured, because there was no objective medical evidence of the impairment in the record.[16] Moreover, Dr. Alexander testified that Plaintiff did not complain of muscle weakness or other symptoms during her dermatology or primary care appointments. As a result, Plaintiff underwent no muscle strength testing or other objective testing during the period that could have provided the basis for medical determinability under the Administration's regulations. This, coupled with the fact that Dr. Chahin treated Plaintiff outside the applicable period, provides the ALJ substantial with evidence to determine that Plaintiff was not disabled. An ALJ must only seek additional evidence where there are "obvious gaps" in the administrative record, of which there were none here. *See Cote v. Berryhill*, No. 3:17cv95 (WWE), 2018 WL 1225543, at *3 (D. Conn., Mar. 9, 2018); *see also, e.g.*, *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (finding that when there is an "adequate" record upon which to make a disability determination, an ALJ does not fail to develop the record by not soliciting more information) *and Rusin v. Berryhill*, 726 F. App'x. 837, 840 (2d Cir. 2018) (finding where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ has no obligation to seek additional information).

*Dr. Gregory's Opinion Evidence*

As to the alleged gap in the record regarding Dr. Gregory, Plaintiff argues that Dr. Gregory "was not only providing hands-on medical services to [Plaintiff] she was serving as the central

---

[16] The ALJ acknowledges that "prior to that date [May 2019], the record shows no objective medical evidence to support the diagnosis." ALJ Dec., R. at 22.

information-gathering point for all of [Plaintiff's] specialists…and was in the best position to opine on [Plaintiff's] impairments." Pl. Mem., ECF No. 13, at 5–6. As such, the ALJ should have sought medical opinion evidence from Dr. Gregory. Defendant argues that because the evidence from the period at issue did not support a finding of disabling symptoms or limitations, the ALJ had adequate information to make an informed decision as to Plaintiff's disability status. The Court agrees that the ALJ did not err.

As stated above, the Commissioner has a duty to develop a complete medical record prior to making a disability determination. *See* 20. C.F.R. § 404.1512(b); *see also Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 509 (2d Cir. 2009) (finding that an ALJ must affirmatively develop the record on behalf of all claimants due to the non-adversarial nature of a benefits proceeding). As also stated above, however, the ALJ is not required to further develop the record "when the evidence already presented is adequate…to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 58, 59 (2d Cir. 2018) (internal quotations omitted); *see also Perez*, 77 F.3d at 48. Dr. Gregory became Plaintiff's primary care physician on July 27, 2017.[17] The record reveals that Dr. Gregory treated Plaintiff with medication but does not otherwise indicate treatment for any disabling limitations. *See* Tr. at 440–52, 456–57, 479–94, 500–23, 530–46. Moreover, the record indicates that Plaintiff's symptoms, including facial swelling and pain, improved or almost resolved with treatment. *See* Tr. at 23–24, 440, 460, 479, 483–86, 489, 493–94, 506–07, 510–22, 514–15, 524, 526–29.

Plaintiff first relies upon *Angelico v. Colvin*, which explains that whether an ALJ erred in failing to request a medical source statement from a treating physician is a "case-specific inquiry." No. 3:15-cv-00831 (JGM), *Recommended Ruling*, at *31–34, (D. Conn. Feb. 8, 2017). But in that

---

[17] Of the fifteen visits documented with Dr. Gregory, seven occurred before Plaintiff's date last insured.

case, the treatment notes and test results from the claimant's treating physicians did not assess *how* various symptoms limited functional capacities, which is not true of this record. The ALJ here specifically referenced many points in the record where Plaintiff's symptoms reduced, significantly improved, or resolved altogether. ALJ Dec., R. at 7–8, 23–24. The ALJ also relied on Plaintiff's own testimony, which confirmed she had the physical capacity to operate a motor vehicle, stand for one to two hours at a time, and complete activities such as laundry, cleaning, and going shopping in stores. ALJ Dec., R. at 23. Further, the ALJ's RFC analysis included limitations to accommodate her symptoms. *See supra*, ALJ Dec., R. at 22. Plaintiff next relies on *Guillen v. Berryhill*, which counsels that remand for lack of a treating physician's report "is not always required…particularly where…the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." 697 F. App'x 107, 108 (2d Cir. 2017) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 24 (2d Cir. 2013)). Unlike in *Guillen*, the medical records available to the ALJ here shed enough light on Plaintiff's RFC and offered enough insight into how her impairments affected her ability to work and undertake activities of daily life.

The Court is satisfied that the ALJ did not "play doctor," substituting his own judgment for competent medical opinion, as Plaintiff suggests. *Cantres v. Berryhill*, No. 3:17-cv-01866 (SALM), at *18 (D. Conn. Nov. 30, 2018). Where "the record contain[s] sufficient other evidence supporting the ALJ's determination" and when "the ALJ weigh[s] all of that evidence when making his residual functional capacity finding," the ALJ does "not rely on his own lay opinion." *Johnson v. Colvin*, 699 F. App'x 44, 46 (2d Cir. 2016) (internal quotations omitted). Even if Plaintiff's position is supported by substantial evidence in the record, an ALJ's decision must be upheld if it too is supported by substantial evidence. *See Selian*, 708 F.3d at 417; *Bonet*, 523 F. App'x at 59.

### 3. The ALJ's Consideration of Plaintiff's Fibromyalgia was Sufficient

Plaintiff also challenges the ALJ's findings regarding her fibromyalgia. Specifically, that the analysis of the condition was "facially defective." Pl. Mem., ECF No. 13, at 11. Defendant attests that the ALJ properly considered Plaintiff's fibromyalgia and assessed its impact on her functioning. For many of the same reasons as discussed above, the Court agrees that the ALJ's consideration of Plaintiff's fibromyalgia was sufficient.

Because the ALJ found Plaintiff's fibromyalgia to be a severe impairment, Plaintiff merely challenges the extent of that severity. As Defendant notes, it is the claimant who bears the burden of providing evidence establishing the severity of the condition. *See Bailey v. Berryhill*, No. 3:18-cv-00013 (WIG), 2019 WL 427320, at *3 (D. Conn. Feb. 4, 2019); *see also Smith v. Berryhill*, 740 F. App'x 721 (2d Cir. 2018) (finding that a claimant had the duty to prove a more restrictive RFC but failed to do so). Where a lack of supporting evidence on a matter for which the claimant bears the burden is combined with other inconsistent record evidence, an ALJ has substantial evidence to support a denial of benefits.[18] *See Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015). And it is not the role of the Court to review the record *de novo*. *See generally Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Brault*, 683 F.3d at 448 (the Court can reject the Commissioner's findings "only if a reasonable factfinder would have to conclude otherwise") (internal quotation marks and citation omitted).

The ALJ noted that while there is no specific listing for fibromyalgia, he was aware that it can cause "fatigue and widespread pain in the joints, muscles, tendons, or nearby soft tissues."

---

[18] The Court therefore disagrees with Plaintiff that the ALJ "cherry-picked" elements of the record that favored his preferred conclusion and ignored unfavorable elements. *See Ardito v. Barnhart*, No. 3:04cv1633 (MRK), 2006 WL 1662890, at *5 (D. Conn. May 25, 2006) (where an ALJ erred when he did not consider all the evidence but rather chose aspects of physicians' reports that supported his findings without explaining his choices or basing them on evidence that was in the record); *Estrella v. Berryhill*, 925 F.3d 90 (2d Cir. 2019) (explaining that cherry-picking a few isolated instances of improvement over the course of a chronic disease is improper).

ALJ Dec. R. at 22. Nonetheless, the ALJ found that the record evidence failed to show that the symptoms caused by Plaintiff's fibromyalgia increased the severity of her medically determinable impairments to the extent that their combination equaled the requirements of a listing. *Id.* And while the ALJ acknowledged that Plaintiff's impairments could have reasonably been expected to cause her alleged symptoms, her testimony regarding the "intensity, persistence and limiting effects" of her symptoms were not consistent with the medical evidence and other evidence in the record. *Id* at 7, R. at 23. As explained above, the ALJ specifically referred to evidence showing that Plaintiff's symptoms improved or resolved with treatment. *See* Tr. 23–24, 440, 460, 479, 483–86, 489, 493–94, 506–07, 510–22, 514–15, 524, 526–29. Further, the ALJ found that pain caused by Plaintiff's disc protrusion at C5-6 significantly decreased with physical therapy and a cervical discectomy fusion in June 2018. ALJ Dec., R. at 24. And finally, Plaintiff addressed left knee pain through an arthroscopy in September 2018, a procedure she "tolerated…well." *Id.* Taking into consideration Plaintiff's fibromyalgia symptoms[19], the ALJ limited her working conditions appropriately—she could perform sedentary work limited to frequent handling and fingering with no exposure to hazards, the climbing of ladders, ropes or scaffolds and only occasional kneeling, crouching, and crawling. Thus, the ALJ adequately considered the entire record and made a determination that was supported therein.[20]

**Conclusion**

For the foregoing reasons, the Plaintiff's Motion to Reverse (or in the alternative for remand), ECF No. 13, is GRANTED in part and the Commissioner's Motion to Affirm, ECF No.

---

[19] "When considered alongside the claimant's fibromyalgia that aggravated her pain symptoms, it is reasonable to conclude that any more demanding lifting, carrying, standing, or walking would exacerbate her conditions to the point that she would not have been able to sustain such work on a regular and continuing basis. (Ex. 1F/2; 3F/165, 169, 177-78, 183)." ALJ Dec., R. at 24.

[20] The Court understands that the Plaintiff desired an alternate determination, but this Court's standard of review of an ALJ's decision is "so deferential that there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).

17, is DENIED. The case is REMANDED for further articulation and/or development of the ALJ's determination at Step Five. Further, on remand, Plaintiff may submit any additional medical records she deems relevant to her application for disability benefits. The Clerk of the Court is directed to enter Judgment in favor of Plaintiff and close the file.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of July 2022.

                                                    */s/ Kari A. Dooley*
                                                  KARI A. DOOLEY
                                                  UNITED STATES DISTRICT JUDGE